UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK DENNIS WEBB,                          Case No. 24-12895

                       Plaintiff,          F. Kay Behm
v.                                          United States District Judge

CITY OF DETROIT, *et al.*,                  Curtis Ivy, Jr.
                                            United States Magistrate Judge
                Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT CITY OF
DETROIT'S SECOND MOTION TO DISMISS (ECF No. 48)**

On November 1, 2024, Plaintiff Derek Dennis Webb filed his *pro se* civil

rights complaint against City of Detroit/Detroit Police Department, Officer Felicia

Washington, Officer Angelica Robinson, Officer L.A. Shamily, Officer R.A.

Randolph, and unnamed John Doe Officers.  (ECF No. 1).  After obtaining the

Court's leave to amend, Plaintiff filed his Amended Complaint on June 16, 2025.

(ECF Nos. 30, 45–46).  On July 7, 2025, Defendant City of Detroit filed its *Second*

*Motion to Dismiss Pursuant to Rule 12(b)(6)* (ECF No. 48).  The motion is fully

briefed and ripe for report and recommendation.  (ECF Nos. 48, 51–53).[1]

---

[1] On the same day Plaintiff submitted his response to Defendant's motion to dismiss, he
also submitted a second document that contains medical records.  (ECF No. 51).  Although the
medical records were not explicitly referenced in the response brief, liberally construing the *pro
se* Plaintiff's filings, it appears Plaintiff intended to file the medical records in support of his
response.  "[T]he Court cannot consider exhibits to a response brief on a motion to dismiss."

This matter was referred to the undersigned for all pretrial matters.  (ECF No. 20).

## I.      BACKGROUND

As best the undersigned can discern from Plaintiff's *pro se* Amended Complaint, his claims arise out of a domestic dispute with Plaintiff's daughter, who lived in his home.  (ECF No. 46, PageID.392, ¶ 26).  It appears that police officers responded to a call to Plaintiff's home and eventually placed Plaintiff under arrest.  (*Id.*).  Plaintiff was taken to Detroit Medical Center ("DMC") "under 5150 for a mental evaluation without any reasonable suspicion of any crime had occurred on 10/25/2022."[2]  (*Id.* at PageID.386, ¶ 2).  Defendant Officers Washington and Robinson, acting with malice and maliciousness, allegedly told

---

*Homrich v. City of Wyoming*, 800 F. Supp. 3d 801, 818 (W.D. Mich. 2025) (citing *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016)); *see also Qiu v. Bd. of Educ. of Oldham Cnty. Schs, Ky.*, No. 3:22-CV-284-DJH-CHL, 2024 WL 5428994, at *3 (W.D. Ky. Mar. 20, 2024) ("[A] court generally may not consider documents attached in response to a motion to dismiss as they are merely matters outside of the pleadings.") (citation modified).  Neither party invoked Rule 12(d) nor asked the Court to convert the motion into one for summary judgment.  Though the Court itself may convert a Rule 12(b)(6) motion into a Rule 56 motion, the Sixth Circuit instructs that sua sponte conversion "should be exercised with caution and attention to the parties' procedural rights." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citation modified).  Here, the undersigned will not sua sponte convert Defendant's motion to dismiss into one for summary judgment under Rule 56, particularly where, as is the case here, the conversion would not aid Plaintiff's argument.

[2] Under California Welfare and Institutions Code, a code 5150 refers to an involuntary 72-hour psychiatric hold as a result of a mental health disorder that makes a person a potential danger to others or themselves.  *See* Cal. Welf. & Inst. Code § 5150.  References to code "5150" have spread beyond the borders of California through popular culture influences; however, Michigan Mental Health Code 333.1400, *et seq.* would govern here.  *See* Mich. Comp. Laws § 330.1400, *et seq.*

the DMC intake nurse that he had been brandishing a firearm and threatening to kill his daughter in front of his grandson, which he denied ever occurred.  (*Id.* at PageID.392, ¶ 26).  Plaintiff alleges that he was jailed without the police officers having any "conclusive evidence that any felonious assault or general threats" occurred.  (*Id.* at PageID.392, ¶ 25).  Plaintiff asserts that none of the police officers asked if Plaintiff had any psychiatric history or illness or if he had ever been in a mental facility before they took him for a psychiatric evaluation.  (*Id.* at PageID.392, ¶ 28).

Under Count I, Plaintiff asserts claims against Officer Washington, Officer Robinson, Officer Shamily, and Sgt. Randolph (collectively "Defendant Officers") for "false detained, illegal search, false arrest, false imprisonment, and frisk/joint gross negligence in violation of his 2nd, 4th, and 14th Amendment Rights, under 42 U.S.C. § 1983."  (*Id.* at PageID.393–94).  Under Count II, Plaintiff asserts claims against Defendant Officers for "gross negligence, kidnap/malicious prosecution."  (*Id.* at PageID.395–96).  Under Count III, Plaintiff asserts claims against Defendant Officers for "breach of duty/duties, breach of trust, breach oath/breach promise, and breach of contract."  (*Id.* at PageID.397–98).  Plaintiff seeks monetary damages to compensate for the psychiatric conditions that he developed resulting from Defendants' actions.  (*Id.* at PageID.399).

## II.    LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–

77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the [p]laintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

## III.   ANALYSIS

### A.   Detroit Police Department

First, Plaintiff asserts his claims against the "City of Detroit/Detroit Police Department."  To the extent that Plaintiff intended to name both City of Detroit and Detroit Police Department ("DPD"), police departments are not entities subject to lawsuits under 42 U.S.C. § 1983.  *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (holding that the police department is an improper defendant in a § 1983 action); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997) (finding that the city police department is an agent of the city and not a proper defendant in a § 1983 action).  The Sixth Circuit has held that "[a] suit against a

city police department in Michigan is one against the city itself, because the city is the real party in interest." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 n. 1 (6th Cir. 1994) (citation omitted); *see also Donaldson v. City of Dayton Ohio Police Dep't*, No. 3:22-CV-368, 2023 WL 2925124, at *4 (S.D. Ohio Apr. 13, 2023), *report and recommendation adopted*, 2023 WL 3205208 (S.D. Ohio May 2, 2023) (holding "police departments are 'merely a municipal agency or department of the city rather than a separate legal entity.'") (citations omitted). Therefore, if Plaintiff intended to separately name Detroit Police Department as a defendant, the suit against the Detroit Police Department is subject to dismissal, and the undersigned will construe any reference to Detroit Police Department as addressing Defendant City of Detroit. *See Von El v. Ecorse Police Dep't*, No. CV 22-12089, 2022 WL 19828979, at *1 (E.D. Mich. Sept. 22, 2022).

### B.    *Monell* Liability

Turning to Defendant City of Detroit, on July 7, 2025, City of Detroit filed its motion to dismiss pursuant to Rule 12(b)(6).  (ECF No. 48).  City of Detroit notes that all three counts in Plaintiff's Amended Complaint are explicitly directed at the individual officers only, and City of Detroit is not named in any of them. (*Id.* at PageID.406).  It also asserts that, other than being listed as a party, City of Detroit is only mentioned in a couple of paragraphs as having committed any acts against Plaintiff.  (*Id.*).  As a result, City of Detroit argues that Plaintiff failed to

plead a claim against it as it was not named under any of the three counts, and the few allegations that do mention the City do not provide a clear factual or legal basis for any claim of relief and are otherwise unintelligible. (*Id.* at PageID.408).

City of Detroit also argues that Plaintiff cannot bring a section 1983 action against a government entity "for injury inflicted solely by its employees." (*Id.*) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695 (1978)). Rather, City of Detroit avers that Plaintiff must plausibly allege that it has a custom or policy that resulted in the deprivation of Plaintiff's rights; however, while Plaintiff includes conclusory references to DPD policy, procedures, and training, he does not describe any custom or policy or explain how they led to a violation of his rights. (*Id.*). City of Detroit also notes that Plaintiff asserts a claim for "gross negligence" which is not an independent cause of action under state or federal law. (*Id.* at PageID.409). Similarly, City of Detroit argues that Plaintiff's claims for "breach of duty, breach of trust, breach of oath/promise, and breach of contract" are not recognized claims and there is no contract between Plaintiff and City of Detroit. (*Id.*).

Plaintiff responds, again to the best the undersigned can discern, that his Amended Complaint names City of Detroit/DPD and four individual officers jointly as employer/employees, and that all counts were directed as a breach of government duty under the scope of the City of Detroit. (ECF No. 52,

PageID.436). He also asserts that his Amended Complaint alleges that Defendants violated their customs, policies, procedures, code of misconduct, and practices that were written and governed by City of Detroit. (*Id.*). Plaintiff states that he has written statements from three physicians that support that three of the four Defendant Officers acted with malice and that DPD and the Office of Chief Investigator conducted a misleading and incomplete investigation that relies on false written statements. (*Id.*). Plaintiff argues that by asserting a claim "Under Color of State Law," it must include a government entity, which would be City of Detroit as the employer. (*Id.*).

Plaintiff then analyzes whether his Amended Complaint "states a claim on which relief can be granted" as to City of Detroit by applying the factors in support of a preliminary injunction. (*Id.* at PageID.437–38). Plaintiff cites the Restatement (Second) of Torts § 282 for the definition of gross negligence in support of it being a cognizable claim. (*Id.* at PageID.439). Finally, Plaintiff states that he disagrees with City of Detroit's claim that he cannot assert a claim against it for its employees' actions, schemes, and strategies to get Plaintiff committed to the "psych ward as mentally ill patient" and remove his guns from his home. (*Id.*) (citing to *Monell*, 436 U.S. at 695).

A municipality can be liable for its own unconstitutional actions, but it is not automatically liable for unconstitutional actions of its employees or agents.

*Monell*, 436 U.S. at 694.  "Instead, the municipality may be liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees."  *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 498 (W.D. Ky. 2021) (citing *Monell*, 436 U.S. at 694); *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) ("A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury.") (citation omitted).  To succeed on a claim against a municipality, the plaintiff must "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation."  *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (citation omitted).  The allegations must set forth the specific policy or custom allegedly adopted by the government.  A plaintiff may do so by pointing to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Jones v. Clark Cnty., Ky.*, 959 F.3d 748, 761 (6th Cir. 2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)); *Monell*, 436 U.S. at 694 (finding that a claim may be brought against a municipality only when "execution of a government's policy or custom, whether

9

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Plaintiff did not make any of the required allegations against Defendant City of Detroit in the Amended Complaint. To begin, as correctly noted by City of Detroit in its motion, Plaintiff listed three counts in his Amended Complaint in which he explicitly named Defendant Officers under each heading but did not name City of Detroit under any count. (ECF No. 46, PageID.393–98; ECF No. 48, PageID.406). In Plaintiff's response brief he states that all three counts are "explicitly directed to include all Parties" and that the Amended Complaint asserts that it is City of Detroit's internal policies, procedures, code of conduct, and training that are at issue. (ECF No. 52, PageID.436).

To the extent that Plaintiff intends to establish liability through a policy of inadequate training or supervision, to state a claim under this theory Plaintiff must allege that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 721 (6th Cir. 2020) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, (1989)). "[P]laintiffs can establish liability under a failure-to-train theory based on 'a single

10

violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential' for a constitutional violation." *Id.* (quoting *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724 (6th Cir. 2015)) (citation modified).  To establish an obvious potential for a constitutional violation, the Sixth Circuit has established two elements: "'It must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights.'" *Id.* (quoting *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 995 (6th Cir. 2017)).  Plaintiff bears the burden of establishing both layers.  *Martinez v. Wayne Cnty., Mich.*, 142 F.4th 828, 844 (6th Cir. 2025)

Assuming for the sake of argument that Plaintiff has adequately pleaded an underlying constitutional violation, he has failed to state a plausible *Monell* claim because he has failed establish that Defendant City of Detroit's training programs were inadequate, the programs' inadequacy will lead to the specific conduct, and that the inadequacy either caused or was closely related to the injury.  *See Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019).  Plaintiff simply alleges, generally, that City of Detroit failed to properly train its employees and the failure to do so was a breach of their duty.  (ECF No. 46, PageID.386 ¶ 1, PageID.387 ¶ 4).  "[T]hese amount to conclusory assertions, not plausible allegations." *Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025).  There are no factual

allegations explaining what the training policies were, why they were inadequate, or how the inadequate training or supervision related to Plaintiff's injuries. *See id.*

To the extent that Plaintiff is asserting a section 1983 claim on the basis of a municipal policy or custom, Plaintiff has failed to identify a policy or custom and connect the policy or custom to the City of Detroit itself rather than to the individual officers' action. The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation modified). For these reasons, to succeed on a *Monell* claim, a plaintiff must first allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. at 691. "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. Second, a plaintiff must show that the alleged conduct qualifies as a policy. *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* liability may also attach when a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal

12

approval through the body's official decisionmaking channels." *Id.* at 690–91. A plaintiff must claim that "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Finally, a plaintiff must show causation. *See Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) ("There must be 'a direct causal link' between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation.") (quoting *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 362 (6th Cir. 2001)) (citations omitted). In other words, a plaintiff must connect the policy to the particular injury alleged.

The primary focus of Plaintiff's Amended Complaint is setting forth Defendant Officers' actions that led to his arrest and transfer for a mental evaluation and specifically references violations of City of Detroit's policies, procedures, and code of conduct. In one of the few explicit references to City of Detroit in the Amended Complaint, Plaintiff stated that he filed this cause of action "against City of Detroit/Detroit Police Department Government Entity for Breach of oath/oblige under this standard of code of conduct[,] policy[,] procedure, practice, training[,] and the law under their written code of conduct." (ECF No. 46, PageID.386, ¶ 1). In another, Plaintiff claimed that "City of Detroit/4 DPD

13

Officer(s) Failed their Duties/Duty, Policy, Procedure and Training action(s)."

(ECF No. 46, PageID.387, ¶ 4).  Finally, Plaintiff explicitly asserted a claim of

gross negligence against City of Detroit as follows:

> Gross negligence, but only with respect to the City of Detroit/DPD policy, procedure standard of code Conduct misconduct, false statement (without incident)[,] ill will, kidnap, illegal search, secure by handcuff, malice, malicious act and malfeasance failed/failure to show any Felonious Assault or any General Threats (Shoot) to any known parties in incident/investigation report 221025-0070 wanted a 5150 result by officers.

(ECF No. 46, PageID.391, ¶ 22).

None of these claims identify a policy or custom or connect the policy or

custom to City of Detroit itself to "show that the particular injury was incurred

because of the execution of that policy," and not simply based on the conduct of

one of its employees.  *Garner*, 8 F.3d at 364.  Most telling is that the bulk of

Plaintiff's allegations are that Plaintiff's injuries are due to Defendant Officers

violating standing policy or their actions went "outside" of the policies, rather than

the policies, procedures, or customs themselves being the cause of Plaintiff's

injury.  (*See, e.g.*, ECF No. 46, PageID.391, ¶ 19 (Defendant Officers "were acting

in their full capacity as employee[s] of Wayne County.  The alleged misconduct

occurred while in the hands of [Defendant Officers]."); *id.* at PageID.394, ¶ 37 (it

was found that Defendant Officers acted without probable cause as is required by

to City of Detroit's policy, procedure, and the law, to arrest Plaintiff.); *id.* at

PageID.395, ¶ 37; PageID.396, ¶ 46; PageID.397 ¶ 49 (Defendant Officers violated

City of Detroit's policies, procedures, and code of conduct, and breached their

duties thereunder); *id.* at PageID.396, ¶ 48) (alleging that Defendant Officers

"work outside" of the policies, procedures, and code of conduct during their

investigation of Plaintiff and their reliance on false statements to arrest Plaintiff)).

Further, in his response to the motion to dismiss, Plaintiff asserted that his claims

rest on the theory of vicarious liability making City of Detroit liable for the actions

of their employees and that by him referencing that Defendant Officers acted

"under the color of state law" in his Amended Complaint, it obviously meant that

his Amended Complaint "would/must include[] the City of Detroit as employer."

(ECF No. 52, PageID.437, 441).

As with his failure-to-train theory of *Monell* liability, Plaintiff provides only

conclusory assertions that Defendant City of Detroit has a policy or custom of

allowing constitutional violations as evidenced by the fact that Plaintiff was

allegedly falsely arrested and forced to undergo an unnecessary psychiatric

evaluation.[3]  Plaintiff attempts to lay the blame on City of Detroit policy without

---

[3] In Plaintiff's response to the motion to dismiss, he asserts in his final paragraph that City of Detroit can hire or fire employees for "unacceptable or inappropriate behavior" or misconduct, or for violating rules, policy, code of conduct, or the law, which "[i]n essence, misconduct is any action or inaction that is considered wrong or inappropriate within a given situation." (ECF No. 52, PageID.441).  The statements made in Plaintiff's response brief that City of Detroit is liable under the theory of action or inaction were not made in the Amended Complaint and will not be considered.  *Key v. Metro Nashville Police Dep't*, No. 3:20-00565, 2021 WL 809686, at *5 (M.D. Tenn. Mar. 3, 2021) ("[A] plaintiff may not amend his complaint

15

factual development to connect a policy or custom with his arrest and forced

psychiatric evaluation.  More is needed to show that City of Detroit is responsible

for a violation of federal law, rather than the actions of their employees.  The

Amended Complaint does not make this showing, so the *Monell* claims should be

dismissed.

### C.    Gross Negligence

Last, Plaintiff appears to assert a claim of "gross negligence" against City of

Detroit under Michigan law, *see supra* Section III(B) at 14, based on the same

conduct as alleged throughout.  (ECF No. 46, PageID.391, ¶ 22).  Defendant City

of Detroit asserts that gross negligence is not a viable claim against it.  (ECF No.

48, PageID.409).  In response, Plaintiff cites the definition of gross negligence

contained in the Restatement (Second) of Torts and then cites cases that define

grossly negligent conduct from the District of Virgin Islands, Second Circuit, and

Third Circuit that do hold that gross negligence can be independent under

Michigan law against a municipality.  (ECF No. 52, PageID.439).

---

by adding factual allegations as a part of a response in opposition to a motion to dismiss.").  That said, the undersigned notes that the final element of an action or inaction claim still requires a showing that "the policy of inaction was the 'moving force' of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (quoting *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).  Thus, Plaintiff's Amended Complaint would still be unable to support a *Monell* claim under this theory for the same reasons discussed herein.

16

In his Amended Complaint, Plaintiff cites Mich. Comp. Laws § 691.1407(7)(a) in support of his gross negligence claim.  (ECF No. 46, PageID.391, ¶ 21).  Section 691.1407(7)(a) does not exist; however, the undersigned assumes that Plaintiff intended to cite § 691.1407(8)(a), which defines gross negligence "as used in this section."  Mich. Comp. Laws § 691.1407(8)(a). Under Michigan's Governmental Tort Liability Act, government employees are entitled to "immunity from tort liability for injuries they cause during the course of their employment so long as the employee's 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'"  Mich. Comp. Laws § 691.1407(2)(c).  Police officers can "claim the protection of governmental immunity from tort liability unless they were acting in so reckless a manner as to constitute 'gross negligence.'"  *Cebreco v. Music Hall Ctr. for the Performing Arts, Inc.*, 555 N.W.2d 862, 866 (Mich. 1996).  The statutory definition of gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(8)(a); *Jennings v. Southwood*, 521 N.W.2d 230, 235 (Mich. 1994).[4]

Plaintiff has failed to plead that Michigan law provides an independent cause of action for gross negligence, particularly against a municipality.  *See King v. City*

---

[4] Plaintiff also cites *Jennings v. Southwood* in his Amended Complaint; but as with all of Plaintiff's other citations in support of his claim, it solely defines gross negligence under Mich. Comp. Laws § 691.1407(7)(a) and employs that definition in deciding a claim under the Emergency Medical Services Act.  (ECF No. 46, PageID.391, ¶ 21).

17

*of Lincoln Park, Mich.*, No. 24-2017, 2025 WL 2218857, at *5 (6th Cir. Aug. 5, 2025) (quoting *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004)) ("Although state officers are not immunized for grossly negligent conduct, claims styled as 'gross negligence' but that are 'fully premised' on intentional conduct are not cognizable claims under Michigan law.") (citation modified); *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 700 (6th Cir. 2018) (holding "Michigan's immunity statute does not, however, provide an independent cause of action for 'gross negligence,' . . .").

Accordingly, Plaintiff's gross negligence claim against Defendant City of Detroit should be dismissed.

## IV.   RECOMMENDATION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant City of Detroit's *Second Motion to Dismiss Pursuant to Rule 12(b)(6)* (ECF No. 48) be **GRANTED** and the City of Detroit and Detroit Police Department be dismissed as parties.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  February 27, 2026.                    s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on the February 27, 2026, by electronic means and/or ordinary mail.

s/Sara Krause
Case Manager
(810) 341-7850

20